1

2

3

4

5

6

7

8                         IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10    RONALD MITCHELL,

11               Petitioner,              No. 2:12-cv-0780 TLN DAD P

12         vs.

13    W. KNIPP,

14               Respondent.              FINDINGS & RECOMMENDATIONS

15    _____/

16              Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17    corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered

18    against him on March 5, 2010 in the Sacramento County Superior Court on the charge of first

19    degree murder with a lying in wait special circumstance along with a sentencing enhancement for

20    intentional discharge of a firearm and causing great bodily injury to the victim.

21              Petitioner seeks federal habeas relief on the following grounds:  (1) the evidence

22    admitted at his trial was insufficient to support his conviction for murder while lying in wait; (2)

23    the trial court violated his right to due process in admitting evidence of uncharged acts of

24    domestic violence; (3) the trial court violated his right to due process in excluding from evidence

25    statements he made in an application for a restraining order against one of his victims; (4) jury

26    instruction error violated his right to due process; (5) the lying-in-wait special circumstance

                                               1

allegation was applied in an unconstitutionally vague and arbitrary manner; and (6) cumulative error at his trial violated his right to due process.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

**I. Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal[1], the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Defendant Ronald Mitchell shot and killed Laprea Tyson, and shot and wounded Tyson's mother, Blanche Brisco, when the two women went to defendant's house to retrieve a skateboard defendant had taken from Blanche Brisco's 13 year-old son, Malik. There was evidence that defendant took the skateboard in order to lure Blanche Brisco, with whom he was having a relationship, to his house.  After telling the women to wait by the front door because he had something to give Brisco, defendant opened his door and immediately began shooting.
>
> A jury convicted defendant of the first degree murder of Laprea Tyson, and found as a special circumstance that he committed the murder while lying in wait.  The jury also found true an enhancement to count one that defendant intentionally and personally discharged a firearm in the commission of the offense, causing great bodily injury to the victim.  The trial court sentenced defendant to life without the possibility of parole for the murder with special circumstances, plus 25 years to life for the enhancement.  The jury also convicted defendant of the attempted murder of Blanche Brisco, and found that he intentionally and personally discharged a firearm in the commission of the offense, causing great bodily injury to the victim.  For this crime, the trial court sentenced defendant to a consecutive term of 14 years to life, plus 25 years to life for the firearm enhancement.  Defendant thus received life without the possibility of parole, plus 64 years to life.
>
> He argues there was insufficient evidence to support the lying-in-wait special circumstance, the trial court erred in admitting evidence of his prior acts of domestic violence, the trial court erred in excluding prior consistent statements he made in an application for a restraining order, the jury instructions on the lying-in-wait special circumstance and contrived self defense were erroneous,

---

[1]  Doc. No. 23-1 (hereinafter Opinion).

the instruction regarding other domestic violence violated due
process and jury trial standards, and the lying-in-wait special
circumstance is unconstitutionally vague as applied to him.

We find no error and shall affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

The shooting occurred shortly after midnight on July 16, 2008.
Brisco had begun dating defendant a little over a year earlier.  She
was still married to Ken Frazier, but they had separated.  Brisco
and her family lived across the street from defendant.  She had four
children: 13 year-old Malik, 17 year-old Roosevelt, 18 year-old
Andrea, and 20 year-old Laprea.

On the afternoon before the shooting, Brisco got off of work at
3:00 p.m.  Defendant drove her home, and they sat around talking,
listening to music, and playing cards on his front porch.  They did
not argue.  Brisco went home around 5:00 or 6:00 p.m.  Laprea and
Frazier showed up a couple of hours later.  Defendant was sitting
on his front porch when the two walked up, and defendant said,
"that nigger over there again."  Brisco answered that he (Frazier)
was visiting.

Around 8:00 or 9:00 p.m., defendant came over to Brisco's house,
knocked on the door and tried to push his way in.  He said he
wanted to talk to Brisco.  Laprea answered the door.  She told
defendant that Brisco did not want to be bothered.  Defendant told
her, "tell your mom to come across the street.  I've got something
for her."

Brisco sat up a while in her bedroom talking to Frazier.  Brisco told
Frazier that she did not want to "mess around" with defendant
anymore because he was "doing too much stuff[.]"  As she was
telling Frazier this, she kept hearing something on the side of the
house, and she thought defendant was listening in on their
conversation, but she did not know for sure.  She got up to check
on the others in the house.  Her sons, Roosevelt and Malik, and her
niece and nephew were all asleep in the living room.

Brisco and Frazier kept talking, and eventually dozed off in the
bedroom.  Shortly after midnight, defendant knocked loudly on
Brisco's front door and opened it.  Defendant asked where Brisco
was, and he was told she was in the bedroom.  Everyone in the
living room, including Laprea, told defendant to go home.
Defendant kept yelling that he needed to talk to Brisco.  Defendant
said, "I could have killed all of you, mother fuckers."  Defendant
was belligerent, and told them to wake up Brisco, to tell the bitch
to come to the door, and to tell her to come across the street
because he had something for her.  Defendant left, but he took with
him a skateboard that belonged to Malik.  Laprea asked defendant

3

to give the skateboard back, but defendant said, No, tell your mother to come get it."

Laprea woke up her mother and told her what had happened. Both women went across the street to defendant's house. Laprea was ahead of her mother, and was already on defendant's porch when Brisco left the house. Dabyus, Brisco's nephew, went over with Brisco. He stayed on the bottom step, while Brisco and Laprea went up on the front porch. Laprea was holding a stick. She told defendant to open the damn door so she could get her brother's skateboard. Roosevelt went up to the porch to try to get Laprea to get off the porch.

Defendant's front door was open, but his security screen was closed. The women could see the skateboard inside the house. Brisco told defendant to open the door and give her the skateboard. Defendant said, "I'm going to open it, hold on, just a minute. I'm gonna open it, you gonna see, I'm going to open it." Brisco told him to quit playing and open the door. Defendant responded, "I'm going to show you, I'm going to open the door in a minute." He said, "Just wait, you'll see what is taking so long." Brisco estimated that they were outside trying to get defendant to open the door for 10 to 15 minutes, however Roosevelt thought defendant only went inside for about two minutes. Defendant kept telling Brisco that he was coming, and that he would be there in a minute.

The next thing Brisco knew, the door opened and defendant started shooting. He shot Laprea in the head, and she fell to the ground. He shot Brisco, but she ran away, bleeding. Defendant fired the gun four or five times.

Laprea died of two gunshot wounds to the head. Brisco received a bullet wound to the right side of her chest. She suffered a significant amount of internal bleeding, and her surgeons were unable to remove the bullet.

Over defendant's objection, the trial court allowed several witnesses to testify to prior acts of violence committed by defendant.

**Marietta Gray**

Gray married defendant in August 2000. She decided to get a divorce about four months later. When she told defendant she wanted a divorce, he went into a rage. On December 5, 2000, she was driving down Franklin Boulevard around 9:00 a.m., when defendant started chasing her in his car. He kept bumping her bumper, and he hit the side of her car. She drove a few blocks, jumped out of the car, and screamed that he was trying to kill her. Gray ran into a meat company, and defendant chased after her. By then, the police had arrived.

4

**Bridgette Williams**

Williams lived across the street from defendant. She had witnessed arguments between defendant and Brisco. On one occasion before the shooting, she heard defendant tell Brisco, "I'll kill you bitch." She also saw defendant break Brisco's window. She could not remember what he said when he broke the window, but his tone of voice was mad.

**Charles Brisco**

Charles is Blanche Brisco's brother. On August 20, 2007, Charles was at his sister's house when defendant came over to talk to Blanche Brisco. Defendant was angry at her because she owed him money. Charles Brisco told defendant he had to leave. Charles and Laprea were standing outside. Defendant got in his truck, drove to the corner of the block, then came back and tried to run over Charles Brisco and Laprea. A police officer happened to be driving by and saw the whole thing, but Charles did not want to press charges.

**Zina Tarver**

Zina Tarver is Blanche Brisco's sister. In December 2007, defendant came to her home. She heard him screaming a bad word, and the windows in her car were broken. She filed a police report. One time defendant left a message on her answering machine saying he was a walking time bomb and that he was going to kill the whole family.

**Blanche Brisco**

Brisco testified to several of defendant's prior acts of violence. She testified that the time he broke Tarver's car windows, she was at Tarver's house, and he came over and started calling her names. He drove off for about 10 minutes, then drove back and broke Tarver's car window. Although he denied breaking the window at the time, he later admitted doing it. Another time when she was at Tarver's, he left a message on the phone, saying he would "kill all you F'ing Briscos . . . and your blind ass momma."

Another time in July 2007, defendant wanted Brisco to go somewhere with him, but she did not want to go. He got angry, grabbed her throat, started choking her, and put her in a headlock. Laprea saw them, told defendant to let her mother go, then picked up a bike wheel and hit him in the mouth with it. The police were called on this occasion, but no one was arrested.

On another occasion, they got into an argument when Brisco would not do something defendant wanted her to do. He hit her in the mouth and knocked out a tooth. Another time he broke a window

in her apartment when they got into an argument.  Laprea broke out one of his windows in retaliation.

Defendant testified in his own defense.  He admitted firing a revolver, but claimed it was in self defense.  He claimed he was afraid for his life because there was a mob coming at his door with knives and sticks and a gun.

(Opinion at 1-8.)

## II.  Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision.  Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  Nonetheless, "circuit court precedent may be persuasive in determining what law is

/////

1   clearly established and whether a state court applied that law unreasonably." <u>Stanley</u>, 633 F.3d at

2   859 (quoting <u>Maxwell v. Roe</u>, 606 F.3d 561, 567 (9th Cir. 2010)).

3          A state court decision is "contrary to" clearly established federal law if it applies a

4   rule contradicting a holding of the Supreme Court or reaches a result different from Supreme

5   Court precedent on "materially indistinguishable" facts. <u>Price v. Vincent</u>, 538 U.S. 634, 640

6   (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may

7   grant the writ if the state court identifies the correct governing legal principle from the Supreme

8   Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2]

9   <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003); <u>Williams</u>, 529 U.S. at 413; <u>Chia v. Cambra</u>, 360

10   F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ

11   simply because that court concludes in its independent judgment that the relevant state-court

12   decision applied clearly established federal law erroneously or incorrectly. Rather, that

13   application must also be unreasonable." <u>Williams</u>, 529 U.S. at 412. <u>See also</u> <u>Schriro v.</u>

14   <u>Landrigan</u>, 550 U.S. 465, 473 (2007); <u>Lockyer</u>, 538 U.S. at 75 (it is "not enough that a federal

15   habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

16   the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit

17   precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

18   the state court's decision." <u>Harrington v. Richter</u>, 562 U.S.___,___,131 S. Ct. 770, 786 (2011)

19   (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for

20   obtaining habeas corpus from a federal court, a state prisoner must show that the state court's

21   ruling on the claim being presented in federal court was so lacking in justification that there was

22   an error well understood and comprehended in existing law beyond any possibility for fairminded

23   disagreement." <u>Richter</u>,131 S. Ct. at 786-87.

24

25       [2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be
overturned on factual grounds unless it is "objectively unreasonable in light of the evidence

26   presented in the state court proceeding." <u>Stanley</u>, 633 F.3d at 859 (quoting <u>Davis v. Woodford</u>,
384 F.3d 628, 638 (9th Cir. 2004)).

1    If the state court's decision does not meet the criteria set forth in § 2254(d), a

2  reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v.

3  Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th

4  Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because

5  of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

6  considering de novo the constitutional issues raised.").

7    The court looks to the last reasoned state court decision as the basis for the state

8  court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.

9  2004).  If the last reasoned state court decision adopts or substantially incorporates the reasoning

10 from a previous state court decision, this court may consider both decisions to ascertain the

11 reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

12 banc).  "When a federal claim has been presented to a state court and the state court has denied

13 relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

14 of any indication or state-law procedural principles to the contrary." Richter, 131 S. Ct. at 784-

15 85.  This presumption may be overcome by a showing "there is reason to think some other

16 explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker,

17 501 U.S. 797, 803 (1991)).  Similarly, when a state court decision on a petitioner's claims rejects

18 some claims but does not expressly address a federal claim, a federal habeas court must presume,

19 subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams,

20 ___ U.S. ___, ___, 133 S. Ct. 1088, 1091 (2013).

21    Where the state court reaches a decision on the merits but provides no reasoning

22 to support its conclusion, a federal habeas court independently reviews the record to determine

23 whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v.

24 Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

25 review of the constitutional issue, but rather, the only method by which we can determine

26 whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853.

1    Where no reasoned decision is available, the habeas petitioner still has the burden of "showing

2    there was no reasonable basis for the state court to deny relief."  Richter, 131 S. Ct. at 784.

3              When it is clear, however, that a state court has not reached the merits of a

4    petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a

5    federal habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v.

6    Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir.

7    2003).

8    **III.  Petitioner's Claims**

9              **A.  Sufficiency of the Evidence**

10             Petitioner's first claim is that there was insufficient evidence introduced at his

11   trial to support the lying in wait special circumstance finding by the jury in connection with the

12   murder of Laprea Brisco.  (Doc. No. 1 (hereinafter Pet.), at 6.)  Specifically, petitioner argues that

13   there was insufficient evidence of "any substantial period of watching and waiting for an

14   opportunity to act."  (Id.)  He claims that he was "retrieving and/or loading" his gun in order to

15   "enable him to shoot" while Blanche and Laprea were waiting outside his front door, and that

16   this circumstance "does not fairly bespeak a substantial period of watching and waiting."  (Id.)

17             The California Court of Appeal rejected petitioner's insufficiency of the evidence

18   argument with respect to the lying in wait finding, reasoning as follows:

19             Defendant contends the evidence was insufficient to support the
             lying-in-wait special circumstance.  An intentional murder must
20           include:  "'(1) a concealment of purpose, [and] (2) a substantial
             period of watching and waiting for an opportune time to act[.]'"
21           (People v. Sims (1993) 5 Cal.4th 405, 432, quoting People v.
             Morales (1989) 48 Cal.3d 527, 557.)  Prior to 2000, the special
22           circumstance also required a finding that the attack occur
             immediately after the period of watching and waiting.  However,
23           Proposition 18, effective March 8, 2000, changed the wording of
             the special circumstance to require that the murder occur "by
24           means of" lying-in-wait instead of "while" lying-in-wait.  This
             "eliminate[d] the immediacy requirement that case law had placed
25           on the special circumstance."  (People v. Superior Court (Bradway)
             (2003) 105 Cal. App.4th 297, 307.)  Defendant contends the

26   /////

9

1     second element, a substantial period of watching and waiting, was
missing here.

2

3     Defendant argues this was merely an escalating situation, and
defendant's delay before shooting was attributable to his retrieving
and/or loading a weapon as the women approached.  He argues that
doing things to enable him to shoot does not establish a period of
watching and waiting.

4

5

6     There is no precise period of time that a defendant must watch and
wait for an opportunity to act in order to satisfy the second
element.  (People v. Moon (2005) 37 Cal.4th 1, 23.)  The purpose
of this element [sic] "is to distinguish those cases in which a
defendant acts insidiously from those in which he acts out of rash
impulse."  (People v. Stevens (2007) 41 Cal.4th 182, 202.)  The
period of time need merely be long enough to show a state of mind
equivalent to premeditation or deliberation.  (Ibid.)

7

8

9

10    Defendant's actions show a substantial period of watching and
waiting.  After luring the victims to his door by taking Malik's
skateboard and telling Laprea that Brisco would have to come get
it, defendant then waited out of sight inside his house until Brisco
was on his front porch, continually telling the victims to wait
outside his door.  He immediately started shooting when he came
out of the door.

11

12

13

14    Whether the victims waited at the door for two minutes or 20
minutes, defendant was using subterfuge to get them and keep
them in a vulnerable position until he could start shooting.  This
was clearly an act of deliberation, and there is no merit to
defendant's claim that the evidence does not support a substantial
period of watchful waiting.

15

16

17

18   (Opinion at 8-9.)

19        The Due Process Clause "protects the accused against conviction except upon

20   proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

21   charged."  In re Winship, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a

22   conviction if, "after viewing the evidence in the light most favorable to the prosecution, any

23   rational trier of fact could have found the essential elements of the crime beyond a reasonable

24   doubt."  Coleman v. Johnson, ___ U.S. ___, 132 S. Ct. 2060, 2064 (2012) (quoting Jackson v.

25   Virginia, 443 U.S. 307, 319 (1979)).  "[T]he dispositive question under Jackson is 'whether the

26   record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'"  Chein

1  v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318).  A reviewing

2  court may set aside a jury verdict on the ground of insufficient evidence only if "no rational trier

3  of the fact could have agreed with the jury."  Cavazos v. Smith, 565 U.S. 1, ___, 132 S. Ct. 2, 4

4  (2011).

5          In conducting federal habeas review of an insufficiency of the evidence claim, all

6  of the evidence must be considered "in the light most favorable to the prosecution."  Johnson,

7  132 S. Ct. at 2064.  See also Ngo v. Giurbino, 651 F.3d 1112, 1115 (9th Cir. 2011).  "A

8  petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the

9  sufficiency of the evidence used to obtain a state conviction on federal due process grounds."

10 Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  In order to grant relief, the federal habeas

11 court must find that the decision of the state court rejecting an insufficiency of the evidence claim

12 reflected an objectively unreasonable application of Jackson and Winship to the facts of the case.

13 Ngo, 651 F.3d at 1115; Juan H., 408 F.3d at 1275 & n.13.  Thus, when a federal habeas court

14 assesses a sufficiency of the evidence challenge to a state court conviction under AEDPA, "there

15 is a double dose of deference that can rarely be surmounted."  Boyer v. Belleque, 659 F.3d 957,

16 964 (9th Cir. 2011).  The federal habeas court determines sufficiency of the evidence in reference

17 to the "substantive elements of the criminal offense" as defined by state law.  Jackson, 443 U.S.

18 at 324 n.16; Chein, 373 F.3d at 983.

19         After reviewing the state court record in the light most favorable to the jury's

20 verdict, this court concludes that there was sufficient evidence introduced at petitioner's trial

21 from which a rational trier of fact could have found that the lying in wait special circumstance

22 allegation was true.  For the reasons explained by the California Court of Appeal, the evidence

23 introduced at petitioner's trial was sufficient to support the jury finding under state law that

24 petitioner committed the murder after a deliberate and substantial period of lying in wait.

25 Petitioner's actions in luring the victims to his front door and then causing them to wait there for

26 a sustained period of time while he prepared to shoot, fully supports the state court's finding that

1  the evidence was sufficient for the jury to find that petitioner did not act out of impulse, but had

2  time to premeditate and deliberate.

3          Petitioner has failed to show that the state courts' rejection of his insufficiency of

4  the evidence argument was an objectively unreasonable application of the decisions in Jackson

5  and Winship to the facts of this case.  He has also failed to overcome the deference due to the

6  state court's findings of fact and its analysis of this claim.   Accordingly, petitioner is not entitled

7  to federal habeas relief on his insufficiency of the evidence claim with respect to the lying in wait

8  special circumstance finding.

9          **B.  Erroneous Admission of Evidence**

10          In his next ground for relief, petitioner claims that the trial court violated his right

11  to due process and equal protection when it admitted at his trial evidence of his uncharged acts of

12  domestic violence against Blanche Brisco and Marietta Gray to show that he had a propensity to

13  commit violent crimes against domestic partners.  (Pet. at 7-12.)   Petitioner argues that

14  California Evidence Code § 1109, which allows the admission into evidence of other acts of

15  domestic violence in a domestic violence prosecution, violates the Due Process and Equal

16  Protection Clauses of the Fourteenth Amendment, both on its face and as applied to him, because

17  it allowed "inflammatory propensity evidence" to be admitted at his trial.  (Id. at 8-10.)  He also

18  argues that the evidence regarding his assault on his ex-wife, Marietta Gray, should have been

19  excluded from evidence under California Evidence Code § 352 as unduly prejudicial.  (Id. at 11.)

20  Finally, petitioner argues that any error by the trial court in admitting this improper propensity

21  evidence was prejudicial.  (Id. at 11-12.)

22          The California Court of Appeal rejected these arguments, reasoning as follows:

23          The trial court admitted the testimony of defendant's ex-wife Gray
            pursuant to both sections 1101 and 1109 of the Evidence Code, and
24          further found pursuant to Evidence Code section 352, that the
            probative value of the evidence outweighed the probability that its
25          admission would necessitate undue consumption of time, create
            undue prejudice, confuse the issues, or mislead the jury.

26  /////

**A. Evidence Code 1109 is Not Unconstitutional**

Defendant first argues that Evidence Code section 1109 violates due process of law, both on its face and as applied in this case.  He recognizes that the appellate courts of this state, following the Supreme Court's decision in <u>People v. Falsetta</u> (1999) 21 Cal .4th 903 (<u>Falsetta</u>), have concluded otherwise, but raises the issue in order to preserve it for further review.

Evidence Code section 1109, subdivision (a)(1) provides:

"Except as provided in subdivision (e) or (f), in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352."

<u>Falsetta</u> held that Evidence Code section 1108, which allows admission of prior sex offenses, does not violate due process.  This court and other courts of appeal have uniformly rejected the argument that Evidence Code section 1109 violates due process, following the reasoning of <u>Falsetta</u>.  (<u>People v. Johnson</u> (2000) 77 Cal.4th 410, 419; <u>People v. Price</u> (2004) 120 Cal. App.4th 224, 240; <u>People v. Escobar</u> (2000) 82 Cal. App.4th 1085, 1095–1097, <u>cert. den. sub nom. Escobar v. California</u> (2001) 532 U.S. 1053 [149 L.Ed.2d 1026]; <u>People v. Hoover</u> (2000) 77 Cal. App.4th 1020, 1025–1030.)  We reject defendant's argument for the same reasons stated in these opinions.

Defendant argues that Evidence Code section 1109 was unconstitutional as applied in his case because it "unduly reduced the People's burden of proof, improperly permitted conviction based solely upon unduly inflammatory character evidence and status, and deprived appellant of a fair trial."  This contention has no merit.

The jury was instructed that defendant was presumed innocent and that the People had the burden of proving him guilty beyond a reasonable doubt.  The jury was also instructed that if it found defendant had committed the uncharged offenses, that finding was not enough to prove that defendant was guilty of the charged crimes, but that the People must still prove every charge and allegation beyond a reasonable doubt.

Defendant also argues Evidence Code section 1109 violated equal protection on its face and as applied to his case.  He argues the section improperly singles out defendants accused of domestic violence and treats them differently from those accused of other crimes.  This argument was rejected in <u>People v. Jennings</u> (2000) 81 Cal. App.4th 1301, 1310–1313 (<u>Jennings</u>).)  <u>Jennings</u> held that the same equal protection analysis should be applied to sex

1    offenses and domestic violence offenses.  (Id. at p. 1311.)  Like sex
     offenses, domestic violence offenses result in trials that are largely
2    credibility contests because of their seriousness and the secretive
     nature of their commission.  (Ibid.)  This justifies the admission of
3    relevant evidence of a defendant's commission of other like
     offenses, and provides a rational basis for the law.  (Ibid.)
4    Jennings, supra, held that the statute did not violate equal
     protection because "[t]he distinction drawn by section 1109
5    between domestic violence offenses and all other offenses is
     clearly relevant to the evidentiary purposes for which this
6    distinction is made."  (Ibid.)  We agree with this reasoning.

7    **B. Trial Court Exercised Discretion Appropriately**

8    Defendant also argues the evidence of the incident involving Gray
     that occurred in 2000 should have been excluded pursuant to
9    Evidence Code section 352.  He argues the prior incident "was
     remote, uncertain, dissimilar to the charged shooting, and
10   extravagant at best to show intentional attempted murder."

11   Evidence Code section 352 grants the court the discretion to
     "exclude evidence if its probative value is substantially outweighed
12   by the probability that its admission will (a) necessitate undue
     consumption of time or (b) create substantial danger of undue
13   prejudice, of confusing the issues, or of misleading the jury."  We
     review the trial court's decision to admit evidence under this
14   section for an abuse of discretion.  (People v. Hamilton (2009) 45
     Cal.4th 863, 930.)

15
     The trial court admitted evidence of the incident involving Gray
16   because it found the incident was not particularly remote in time,
     was similar in that it involved violence toward a spouse or
17   girlfriend, and would not involve the addition of many witnesses.
     We will not reverse the trial court's decision unless it is arbitrary,
18   capricious, or exercised in a patently absurd manner that resulted in
     a manifest miscarriage of justice.  (People v. Rodrigues (1994) 8
19   Cal.4th 1060, 1124–1125.)  The trial court did not abuse its
     discretion.  It considered the relevant elements of Evidence Code
20   section 352, and its decision was well within the dictates of the
     statute.

21

22   (Opinion at 10-13.)

23   **1. Analysis of Due Process Claim**

24          As explained above, a federal writ of habeas corpus is not available for alleged

25   error in the interpretation or application of state law.  Wilson, 131 S. Ct. at 16.  Absent some

26   federal constitutional violation, a violation of state law does not provide a basis for habeas relief.

1    Id.  Accordingly, the question whether evidence of prior uncharged acts was properly admitted

2    under California law is not cognizable in this federal habeas corpus proceeding.  McGuire, 502

3    U.S. at 67.  The only question before this court is whether the state trial court committed an error

4    that rendered the trial so arbitrary and fundamentally unfair that it violated federal due process.

5    Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009); Jammal v. Van de Kamp, 926 F.2d

6    918, 919 (9th Cir. 1991) ("The issue for us, always, is whether the state proceedings satisfied due

7    process; the presence or absence of a state law violation is largely beside the point.").

8            A writ of habeas corpus will be granted for an erroneous admission of evidence

9    "only where the 'testimony is almost entirely unreliable and . . . the factfinder and the adversary

10   system will not be competent to uncover, recognize, and take due account of its shortcomings.'"

11   Mancuso v. Olivarez, 292 F.3d 939, 956 (9th Cir. 2002) (quoting Barefoot v. Estelle, 463 U.S.

12   880, 899 (1983)).  Admission of evidence violates due process only if "there are no permissible

13   inferences the jury may draw from the evidence."  Jammal, 926 F.2d at 920.  "Even then, the

14   evidence must 'be of such quality as necessarily prevents a fair trial.'"  Id. (quoting

15   Kealohapauole v. Shimoda, 800 F.2d 1463 (9th Cir. 1986)).

16           Moreover, as the Ninth Circuit has observed:

17           The Supreme Court has made very few rulings regarding the
             admission of evidence as a violation of due process.  Although the
18           Court has been clear that a writ should be issued when
             constitutional errors have rendered the trial fundamentally unfair
19           (citation omitted), it has not yet made a clear ruling that admission
             of irrelevant or overtly prejudicial evidence constitutes a due
20           process violation sufficient to warrant issuance of the writ.

21   Holley, 568 F.3d at 1101 ("[U]nder AEDPA, even the clearly erroneous admission of evidence

22   that renders a trial fundamentally unfair may not permit the grant of federal habeas corpus relief

23   if not forbidden by 'clearly established Federal law,' as laid out by the Supreme Court.")

24           Applying these legal principles here, the state appellate court's rejection of

25   petitioner's due process claim based on the alleged erroneous admission of evidence does not

26   support his request for federal habeas relief under AEDPA because the admission of evidence

                                                 15

1   regarding his prior acts of domestic violence against Brisco and Marietta Gray did not violate

2   clearly established federal law.  Id.  The United States Supreme Court "has never expressly held

3   that it violates due process to admit other crimes evidence for the purpose of showing conduct in

4   conformity therewith, or that it violates due process to admit other crimes evidence for other

5   purposes without an instruction limiting the jury's consideration of the evidence to such

6   purposes."  Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001), overruled on other grounds

7   by Woodford v. Garceau, 538 U.S. 202 (2003).  In fact, the Supreme Court has expressly left

8   open this question.  See Mcguire, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we

9   express no opinion on whether a state law would violate the Due Process Clause if it permitted

10  the use of 'prior crimes' evidence to show propensity to commit a charged crime"); see also

11  Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (holding that state court had not acted

12  objectively unreasonably in determining that the propensity evidence introduced against the

13  defendant did not violate his right to due process); Alberni v. McDaniel, 458 F.3d 860, 863-67

14  (9th Cir. 2006) (denying a petitioner's claim that the introduction of propensity evidence violated

15  his due process rights under the Fourteenth Amendment because "the right [petitioner] asserts

16  has not been clearly established by the Supreme Court, as required by AEDPA"); United States v.

17  LeMay, 260 F.3d 1018 (9th Cir. 2001) (Fed. R. Evid. 414, permitting admission of evidence of

18  similar crimes in child molestation cases, under which the test for balancing probative value and

19  prejudicial effect remains applicable, does not violate the due process clause).

20          Further, in this case any error in admitting the challenged testimony did not have

21  "a substantial and injurious effect or influence in determining the jury's verdict."  Brecht v.

22  Abrahamson, 507 U.S. 619, 637 (1993).  See also Penry v. Johnson, 532 U.S. 782, 793-96

23  (2001).  The record reflects that the state trial judge struck an appropriate balance between

24  petitioner's rights and the clear intent of the California legislature that evidence of prior similar

25  acts be admitted in domestic violence prosecutions.  The trial court admitted the testimony of

26  Gray and Brisco only after concluding that their testimony was relevant, appropriate, and

1    permitted under California law.  Moreover, the instructions given in this case did not compel the

2    jury to draw an inference of propensity from this evidence – they simply allowed it.  As noted by

3    the state appellate court, the trial court instructed petitioner's jury that "petitioner was presumed

4    innocent," that "the People had the burden of proving him guilty beyond a reasonable doubt," and

5    that "if it found defendant had committed the uncharged offenses, that finding was not enough to

6    prove that defendant was guilty of the charged crimes, but that the People must still prove every

7    charge and allegation beyond a reasonable doubt."  (Opinion at 11) (See also Clerk's Transcript

8    on Appeal (CT) at 225, 250).  The jury is presumed to have followed these instructions.  Weeks

9    v. Angelone, 528 U.S. 225, 234 (2000); Brown v. Ornoski, 503 F.3d 1006, 1018 (9th Cir. 2007).

10   Finally, in light of the significant and substantial evidence of petitioner's guilt introduced at his

11   trial, as described in the opinion of the California Court of Appeal, the challenged testimony

12   would not have had a "substantial and injurious effect" on the verdict in this case.  See Brecht,

13   507 U.S. at 623.

14           The admission of petitioner's prior acts of domestic violence did not violate any

15   right clearly established by federal law nor did its admission result in prejudice under the

16   circumstances of this case.  Accordingly, petitioner is not entitled to federal habeas relief on his

17   due process claim.

18                              **2.  Analysis of Equal Protection Claim**

19           Petitioner has also failed to demonstrate that the state trial court's admission of his

20   prior acts of domestic violence into evidence pursuant to California Evidence Code § 1109

21   violated his rights under the Equal Protection Clause.  In LeMay, the Ninth Circuit held that

22   Federal Rule of Evidence 414 did not violate the Equal Protection Clause because it did not

23   discriminate against any group of individuals on the basis of a suspect or quasi-suspect class and

24   did not infringe on a fundamental right.  260 F.3d at 1030 (defendants have "no fundamental

25   right to have a trial free from relevant propensity evidence that is not unduly prejudicial").  Thus,

26   the rule was found to be constitutional so long as it bore a "reasonable relationship to a legitimate

                                                     17

government interest." Id. at 1031.  The court in LeMay also observed that Rule 414 allowed

prosecutors to introduce relevant evidence in furtherance of the legitimate government interest of

prosecuting and convicting sex offenders.  Id.  On this basis the court concluded that the equal

protection challenge to Rule 414 of the Federal Rules of Evidence to be without merit.  Id.

Similarly, the class of perpetrators of domestic violence is not a suspect class here.

Further, California Evidence Code § 1109 does not infringe on a fundamental right because

petitioner has no fundamental right to a trial free from relevant propensity evidence that is not

unduly prejudicial.  See LeMay, 260 F.3d at 1030.  Likewise, § 1109 bears a reasonable

relationship to the legitimate government interest in the effective prosecution of cases of

domestic violence.  See id. at 1031.

Petitioner has not demonstrated that the state appellate court decision rejecting his

equal protection challenge to the admission of evidence of prior acts of domestic violence was

contrary to or an unreasonable application of federal law.  Accordingly, petitioner is not entitled

to federal habeas relief on that claim.

### C.  Exclusion of Evidence in Application for Restraining Order

In his next ground for relief, petitioner claims that the trial court violated his

rights to due process, to present a defense, and to confront the witnesses against him when it

excluded "significant prior consistent statements" he made in an application he had filed for a

restraining order against Blanche Brisco.  (Pet. at 13-14.)

The California Court of Appeal rejected this argument advanced by petitioner on

appeal, reasoning as follows:

**Prior Consistent Statements**

> Defendant argues the trial court erred in excluding evidence
> contained in an application for a restraining order against Brisco.
> He claims the hearsay statements contained in the restraining order
> should have been admitted as prior consistent statements pursuant
> to Evidence Code section 791.

/////

Evidence Code section 791 provides:

"Evidence of a statement previously made by a witness that is consistent with his testimony at the hearing is inadmissible to support his credibility unless it is offered after:

(a) Evidence of a statement made by him that is inconsistent with any part of his testimony at the hearing has been admitted for the purpose of attacking his credibility, and the statement was made before the alleged inconsistent statement; or

(b) An express or implied charge has been made that his testimony at the hearing is recently fabricated or is influenced by bias or other improper motive, and the statement was made before the bias, motive for fabrication, or other improper motive is alleged to have arisen."

The trial court allowed defendant to introduce into evidence a redacted application for a domestic violence restraining order. The police seized the application from defendant's house. The trial court did not allow defendant's hearsay statements made in support of the application to be admitted. These are the statements defendant claims the trial court erroneously excluded. He argues the excluded statements would have been relevant to bolster his self defense claim based on his fear of Brisco's family when they came at him the night of the shooting. He claims the excluded statements supported his claim that the family members were armed.

The excluded statements claimed: (1) that Brisco tried to cut defendant with a knife, threatened to kill him and his care worker, and broke his truck windshield while she was drunk and high on cocaine and marijuana; (2) that Brisco threatened to kill him and his care worker when he told her it was over between them, broke his windshield again, and broke a window in his house; (3) that Roosevelt threatened to shoot him and his care worker; (4) that Brisco and her family threatened to kill him and his care worker; and (5) that Brisco slapped him all the time and pushed him on his bad shoulder.

This is in marked contrast to defendant's testimony. In describing Brisco and her family the night of the shooting he stated: "I don't know what happened to them [Brisco's family], they was just all – I don't know what was in them, they were totally different, I never seen them like that before." He testified that he "loved that whole family." He testified that the day before the shooting he had prepared a barbeque for Brisco and her family. Regarding Roosevelt, defendant testified that he was on "good terms" with Roosevelt, that he had no animosity toward him, and that "as a matter of fact, I supported him, come pick him up from his Juvenile Hall, take him to his Juvenile Hall appointments on what

1    he had to do on weekends and so forth."  Defendant stated he had
     "no problem" with Roosevelt.
2
     Evidence Code section 791 clearly requires that the hearsay
3    statement or statements sought to be admitted must be consistent
     with the witness's testimony.  That was not the case here.
4
     The prosecutor asked whether defendant's windows had been
5    broken, and defendant admitted Laprea had broken his window.
     However, there was never any express or implied claim that
6    defendant fabricated this testimony.  In fact, Brisco herself testified
     that Laprea broke defendant's window.
7
     Defendant also testified that Charles Brisco, Blanche's brother,
8    pulled a gun on him, but this was not a statement made in the
     application for restraining order, and Charles Brisco was not
9    present the night of the shooting.

10   The trial court correctly excluded the hearsay statements in the
     application for restraining order.  The hearsay statements were not
11   consistent with defendant's testimony for the most part, and to the
     extent they were consistent with his testimony, there was no claim,
12   express or implied, that he fabricated that testimony.

13   To the extent defendant argues the exclusion of the evidence
     constituted a refusal to allow him to present a defense, we disagree.
14   "'As a general matter, the "[a]pplication of the ordinary rules of
     evidence . . . does not impermissibly infringe on a defendant's right
15   to present a defense." [Citations.]' [Citation.]"  (People v.
     McNeal (2009) 46 Cal.4th 1183, 1203.)  Where the trial court did
16   not preclude defendant from presenting a defense, but merely
     rejected some evidence, any error is reviewed under People v.
17   Watson (1956) 46 Cal.2d 818, to determine whether it is
     reasonably probable defendant would have achieved a more
18   favorable result absent the exclusion of the evidence.  (Ibid.)
     Defendant's due process right to present a defense does not include
19   the right to present every bit of evidence he wants admitted.
     (People v. Milner (1988) 45 Cal.3d 227, 240, fn. 11.)
20
     We conclude it is not reasonably probable defendant would have
21   received a more favorable result.  First, there was ample testimony
     presented by several witnesses that the relationship between
22   defendant and Brisco was combative.  There was other testimony
     that Laprea had been armed with a stick when she went to
23   defendant's house the night of the shooting.  Charles Brisco
     admitted he had previously threatened defendant.  There was
24   testimony regarding prior physical confrontations between Laprea
     and defendant.  The hearsay statements defendant sought to admit
25   were merely cumulative of the volatile nature of his relationship to
     Brisco and her family.
26   /////

1   Second, defendant's self defense claim was patently unbelievable.
    According to defendant, he was at Brisco's apartment listening at
2   the front door when he heard Laprea say to Frazier, "get your gun,
    we gonna go kill this old man."  He walked back to his house, but
3   did not lock his door.  He did not call 911.  Instead, he got his gun.
    Then he went to use the bathroom.  Brisco and Laprea entered his
4   house and attacked him.  Laprea tried to take the gun from him and
    it went off.  In another part of his testimony he claimed he shot into
5   the air while he was on the ground.  He shot into the air to scare
    them, and the next thing he knew someone says he shot her.

6
    As the prosecutor argued below, defendant's claim that he was
7   afraid for his life the night he shot Laprea and Brisco is
    inconsistent with the facts.  "[I]f you hear a threat that someone is
8   going to kill you, you're not going to rush to your house, not lock
    your door and just go to the bathroom.  You're going to call 911 ."
9
    Finally, defendant's account is completely at odds with the
10  accounts of multiple witnesses that he told Brisco and Laprea to
    stay on the porch, that he was coming, and that he had something
11  for Brisco.

12  (Opinion at 13-17.)

13          As noted above, petitioner claims that the trial court's ruling excluding his

14  statements contained in his prior application for a restraining order against Blanche Brisco

15  violated his right to due process, to present a defense, and to confront the witnesses against him.

16  Criminal defendants have a constitutional right, implicit in the Sixth Amendment, to present a

17  defense; this right is "a fundamental element of due process of law."  Washington v. Texas, 388

18  U.S. 14, 19 (1967).  See also Crane v. Kentucky, 476 U.S. 683, 687, 690 (1986); California v.

19  Trombetta, 467 U.S. 479, 485 (1984); Webb v. Texas, 409 U.S. 95, 98 (1972); Moses v. Payne,

20  555 F.3d 742, 757 (9th Cir. 2009).  However, the constitutional right to present a defense is not

21  absolute.  Alcala v. Woodford, 334 F.3d 862, 877 (9th Cir. 2003).  "Even relevant and reliable

22  evidence can be excluded when the state interest is strong."  Perry v. Rushen, 713 F.2d 1447,

23  1450 (9th Cir. 1983).

24          A state law justification for exclusion of evidence does not abridge a criminal

25  defendant's right to present a defense unless it is "arbitrary or disproportionate" and "infringe[s]

26  upon a weighty interest of the accused."  United States v. Scheffer, 523 U.S. 303, 308 (1998).

21

1    See also Crane, 476 U.S. at 689-91 (discussion of the tension between the discretion of state

2    courts to exclude evidence at trial and the federal constitutional right to "present a complete

3    defense"); Greene v. Lambert, 288 F.3d 1081, 1090 (9th Cir. 2002).  Further, a criminal

4    defendant "does not have an unfettered right to offer [evidence] that is incompetent, privileged,

5    or otherwise inadmissible under standard rules of evidence."  Montana v. Egelhoff, 518 U.S. 37,

6    42 (1996) (quoting Taylor v. Illinois, 484 U.S. 400, 410 (1988)).  "A habeas petitioner bears a

7    heavy burden in showing a due process violation based on an evidentiary decision."  Boyde v.

8    Brown, 404 F.3d 1159, 1172 (9th Cir. 2005).

9            The California Court of Appeal concluded that petitioner's statements in support

10   of his application for a restraining order were not admissible under California Evidence Code §

11   791, largely because they were inconsistent with his trial testimony.  That conclusion, based on

12   an analysis of state law, is binding on this court.  Jammal, 926 F.2d at 919.  The state appellate

13   court also concluded that any evidentiary error by the trial court in excluding evidence of

14   petitioner's hearsay statements did not prejudice his defense.  The state court reasoned that

15   petitioner's statements in his prior application for a restraining order were merely cumulative of

16   similar trial evidence, which showed that petitioner and the Briscos had a volatile and sometimes

17   hostile relationship which included acts of violence against petitioner.  This court agrees with

18   that reasoning.  The trial court's exclusion of cumulative evidence regarding petitioner's

19   turbulent relationship with Blanche Brisco and her family did not prevent petitioner from

20   presenting his defense that he was acting in self-defense, nor did it render his trial fundamentally

21   unfair.[3]

22           The state appellate court's conclusion that petitioner did not suffer prejudice from

23   any evidentiary error by the trial court in excluding evidence of his statements contained in his

24

25           [3]  The California Court of Appeal also found that petitioner's defense based upon his
     claim of acting in self-defense was contrary to all of the other evidence introduced at his trial and
26   was patently unbelievable.  That conclusion is supported by this court's review of the trial record
     as well.

1  application for a restraining order is not "arbitrary or disproportionate" and did not unduly

2  infringe on petitioner's right to present a defense.  Certainly the decision of the California Court

3  of Appeal with respect to this issue is not "so lacking in justification that there was an error well

4  understood and comprehended in existing law beyond any possibility for fairminded

5  disagreement."  Richter, 131 S. Ct. at 786-87.  On the contrary, the state appellate court decision

6  is fully supported by the state court record of petitioner's trial.  Accordingly, petitioner is not

7  entitled to federal habeas relief with respect to this claim.

8     **D.  Jury Instruction Error**

9           Petitioner raises three claims of jury instruction error.  After setting forth the

10  applicable legal principles, the court will address these claims in turn below.

11        **1.  Applicable Legal Principles**

12           In general, a challenge to jury instructions does not state a federal constitutional

13  claim.  McGuire, 502 U.S. at 72; Engle v. Isaac, 456 U.S. 107, 119 (1982)); Gutierrez v. Griggs,

14  695 F.2d 1195, 1197 (9th Cir. 1983).  In order to warrant federal habeas relief, a challenged jury

15  instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but

16  must violate some due process right guaranteed by the fourteenth amendment."  Cupp v.

17  Naughten, 414 U.S. 141, 146 (1973).  To prevail on such a claim petitioner must demonstrate

18  "that an erroneous instruction 'so infected the entire trial that the resulting conviction violates

19  due process.'"  Prantil v. State of Cal., 843 F.2d 314, 317 (9th Cir. 1988) (quoting Darnell v.

20  Swinney, 823 F.2d 299, 301 (9th Cir. 1987)).  In making its determination, this court must

21  evaluate the challenged jury instructions "'in the context of the overall charge to the jury as a

22  component of the entire trial process.'"  Id. (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th

23  Cir. 1984)).  Where the challenge is to a refusal or failure to give an instruction, the petitioner's

24  burden is "especially heavy," because "[a]n omission, or an incomplete instruction, is less likely

25  to be prejudicial than a misstatement of the law."  Henderson v. Kibbe, 431 U.S. 145, 155

26  (1977).  See also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997).

### 2. Instruction on Lying-in-Wait

Under California law, murder perpetrated by means of "lying in wait" is one type of first degree murder.  (Cal. Penal Code § 189).  In addition, California law defines "special circumstances," in which the penalty for first degree murder, if one of these circumstances is found, is death or life without parole.  (Cal. Penal Code § 190.2(a)).  One such special circumstance applies when the defendant killed the victim "by means of lying in wait."  (Cal. Penal Code § 190.2(a)(15)).[4]

Petitioner claims that the jury instruction given at his trial on the lying in wait special circumstance violated his right to "a fair trial and a jury determination on all issues beyond a reasonable doubt."  (Id. at 15-17.)  He also asserts that if his trial counsel was required to object to this aspect of the special circumstance jury instruction in order to preserve the issue for appeal, he rendered ineffective assistance in failing to do so.  (Id. at 17-18.)

The California Court of Appeal rejected these arguments on state law grounds, reasoning as follows:

> Defendant argues the standard jury instruction on the lying-in-wait special circumstance given here was erroneous.  He claims the instruction should have included an immediacy requirement.
>
> The trial court gave the standard CALCRIM No. 728 instruction as follows:
>
> "The defendant is charged with a special circumstance of murder committed while lying in wait in violation of Penal Code section 190.2(a) 15.  To prove that this special circumstance is true, the People must prove that the defendant intentionally killed Laprea Tyson, and the defendant committed the murder by means of lying in wait.
>
> A person commits a murder by means of lying in wait if:

/////

_____

[4]  In this case, petitioner was convicted of the first degree murder of Laprea Tyson by lying in wait and the jury also found the special circumstance of lying in wait to be true. Accordingly, petitioner was sentenced to life imprisonment without the possibility of parole for the murder of which he was convicted rather than twenty-five years to life imprisonment.

1      He concealed his purpose from the person killed;

2      He waited and watched for an opportunity to act, then he made a
       surprise attack on the person killed from a position of advantage,
3      and he intended to kill the person by taking the person by surprise.

4      The lying in wait does not need to continue for any particular
       period of time, but its duration must be substantial and must show
5      a state of mind equivalent to deliberations and premeditation.

6      The defendant acted deliberately, if he carefully weighed the
       considerations for and against his choice, and knowing the
7      consequences and decided to kill.  The defendant acted with
       premeditation if he decided to kill before committing the act that
8      caused death.

9      A person can conceal his . . . purpose, even if the person killed is
       aware of the other person's physical presence.
10
       The concealment can be accomplished by ambush or some other
11     secret plan."

12     Although Penal Code section 190.2, subdivision (a)(15) states
       simply that the special circumstances applies if "[t]he defendant
13     intentionally killed the victim by means of lying in wait[,]"
       defendant argues the jury should have been instructed that the
14     defendant must have committed the murder while lying in wait or
       immediately thereafter.  His reasoning is that this language is
15     included in the instruction for first degree lying-in-wait murder,
       and it is incongruous that the requirement for the special
16     circumstance would be less stringent than the requirement for the
       murder itself.
17
       The instruction was a correct statement of law and to the extent
18     defendant argues the instruction given should have been modified
       to add an immediacy requirement, such argument is forfeited
19     because it was not raised below.  (People v. Richardson (2008) 43
       Cal.4th 959, 1022–1023.)  As the court explained in People v.
20     Superior Court (Bradway), supra, 105 Cal. App.4th at page 307,
       the voters passed Proposition 18 in 2000 to change the wording of
21     the lying-in-wait special circumstance requirement to conform to
       the lying-in-wait language defining first degree murder.  The
22     change "essentially eliminate[d] the immediacy requirement that
       case law had placed on the special circumstance." ( Ibid.)
23
       There was no error in the instruction given.
24

25   (Opinion at 18-20.)

26   /////

25

1    Petitioner's claim, if any, that the jury instruction given at his trial on the lying-in-

2    wait special circumstance violated California law is not cognizable in this federal habeas petition.

3    McGuire, 502 U.S. at 72; Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("a state court's

4    interpretation of state law, including one announced on direct appeal of the challenged

5    conviction, binds a federal court sitting in habeas corpus.").  Moreover, as the state appellate

6    court explained, in 2000 California law was changed so as to essentially eliminate the immediacy

7    requirement that case law had previously placed on the lying-in-wait special circumstance.

8    Petitioner's related federal due process claim also lacks merit and should be

9    rejected.  In any event, the omission from the special circumstance jury instruction of a

10   requirement that the defendant must have committed the murder while lying in wait or

11   immediately thereafter did not render petitioner's trial fundamentally unfair.  This is so because

12   the trial testimony established that petitioner fired at his victims immediately after he finished

13   loading his gun, and while they remained waiting at his front door at his request.  In light of this

14   evidence of "immediacy," the addition of an immediacy requirement in the jury instruction

15   would not have resulted in a different verdict on the special circumstance allegation.  In other

16   words, given the evidence adduced at trial, the jury would have reached the same verdict on the

17   special circumstance allegation even if the language suggested by petitioner had been included in

18   the challenged jury instruction.

19   This court also notes that petitioner has not cited any federal case holding that the

20   due process clause is violated if a jury instruction on the special circumstance of lying in wait

21   lacks language to the effect that the murder must take place immediately after the period of

22   watching and waiting.  Accordingly, petitioner has failed to demonstrate that the state court's

23   decision on this claim was contrary to or an unreasonable application of federal law.

24   For these reasons, petitioner is not entitled to federal habeas relief on this jury

25   instruction claim.

26   /////

**3. Instruction on "Contrived Self-Defense"**

In his next ground for relief, petitioner claims that the trial court violated his rights to due process, to present a defense, and to a jury determination on all issues by instructing the jury that he did not have a right to act in self-defense if he provoked a fight or quarrel in order to create an excuse to use force ("contrived self-defense"). (Pet. at 19.) Petitioner contends in this regard that this instruction was unsupported by the evidence and was overbroad in its reference to a "quarrel." (Id. at 19-21.) He argues, "seeking a quarrel is not enough and courts should not instruct on contrived self-defense as a limitation on self-defense unless the evidence supports it." (Id. at 21.)

The California Court of Appeal rejected these same arguments, ruling as follows:

> Defendant argues it was error to give a jury instruction informing the jury that a person does not have a right to self defense if he provokes a fight or quarrel to create an excuse to use force because there was no evidence to support the instruction and because it was overbroad.
>
> Defendant's overbreadth argument is that merely seeking a quarrel is insufficient to negate a claim of self defense. He claims a defendant must initiate a physical assault or commit a felony to lose the right to self defense.
>
> The instruction given was a correct statement of the law. The jury was informed that a defendant may not claim self defense if he "provokes the fight or quarrel with the intent to create an excuse to use force." The court's instructions using the language of CALCRIM No. 3471 derives from People v. Hinshaw (1924) 194 Cal. 1, 26, wherein the court stated that it was a "recognized principle of law 'that self-defense is not available as a plea to a defendant who has sought a quarrel with the design to force a deadly issue and thus, through his fraud, contrivance or fault, to create a real or apparent necessity for making a felonious assault.'"
>
> To the extent defendant argues the instruction should have clarified the type of fight or quarrel a defendant must initiate to lose the right of self-defense, the issue is forfeited "because defendant did not request such clarification below." (People v. Jenkins (2000) 22 Cal.4th 900, 1020; People v. Guerra (2006) 37 Cal.4th 1067, 1138 ["Generally, a claim of instructional error is not cognizable on appeal if the instruction is correct in law and the defendant fails to request a clarification instruction."].)

/////

27

1     Defendant's assertion that no evidence supported the instruction is
      without merit, and would not warrant a reversal in any event.  The
2     evidence showed that defendant came uninvited to Brisco's house
      and took her son's skateboard in order to lure her to his house,
3     where he concealed himself before opening his door and firing his
      gun.  On these facts, the court reasonably determined CALCRIM
4     No. 3472 was appropriate.  "A trial judge's superior ability to
      evaluate the evidence renders it highly inappropriate for an
5     appellate court to lightly question his determination to submit an
      issue to the jury.  A reviewing court certainly cannot do so where,
6     as here, the trial court's determination was agreeable to both the
      defense and the prosecution."  (People v. McKelvy (1987) 194 Cal.
7     App.3d 694, 705.)

8     Even if we were to conclude there was insufficient basis for giving
      CALCRIM No. 3472, we would not reverse because the jury is
9     presumed to disregard an instruction if it finds the evidence does
      not support its application.  (People v. Olguin (1994) 31 Cal.
10    App.4th 1355, 1381.)

11 (Opinion at 20-21.)

12         Petitioner has failed to demonstrate that the decision of the California Court of

13 Appeal rejecting this jury instruction challenge was contrary to or an unreasonable application of

14 the federal due process principles set forth above.  The instruction given by the trial court with

15 respect to the limitation on the right to claim self-defense is fully supported by the evidence

16 introduced at trial and is a correct statement of California law.  In addition, petitioner has failed

17 to show that the substance of the instruction rendered his trial fundamentally unfair in any way.

18 Accordingly, he is not entitled to federal habeas relief on this jury instruction error claim.

19              **4.  Instructions Regarding Other Instances of Domestic Violence**

20         In his next ground for relief, petitioner claims that "even if Evidence Code Section

21 1109 is constitutional, the version of CALCRIM No. 852 given, in combination with a

22 conflicting burden of proof instruction (CALCRIM No. 224), was erroneous, denying [petitioner]

23 due process of law, a fair trial, and the right to a jury determination beyond a reasonable doubt."

24 (Pet. at 22.)  In essence, in this claim for relief petitioner is arguing that the jury instruction given

25 at his trial regarding how domestic violence propensity evidence should be evaluated allowed the

26 jury to find him guilty of the charged offenses based on evidence that was not proved beyond a

28

1   reasonable doubt.  (Id. at 22-26.)  Specifically, petitioner argues that CALCRIM No. 852 allowed

2   jurors to "infer guilt based on circumstantial evidence proven by a preponderance."  (Id. at 24.)

3   He further contends that the instruction "needs to explain that circumstantial evidence like prior

4   offenses which is <u>essential</u> for guilt must be proved beyond a reasonable doubt."  (Id.)

5           The California Court of Appeal rejected these arguments as well, reasoning as

6   follows:

> Defendant argues that even if Evidence Code section 1109
> allowing evidence of prior acts of domestic violence is
> constitutional, the instruction given (CALCRIM No. 852) violated
> due process and jury trial standards because it permitted a finding
> of guilt based upon prior conduct, which was proven only by a
> preponderance of the evidence.  Defendant's argument is
> unpersuasive.
>
> The court gave this instruction at the close of the evidence:
>
>> "The People also presented evidence that the
>> defendant committed domestic violence that was
>> not charged in this case.
>>
>> ............
>>
>> You may consider this evidence only if the People
>> have proved by a preponderance of the evidence
>> that the defendant, in fact, committed the uncharged
>> domestic violence.
>>
>> Proof by a preponderance of the evidence is
>> different, . . . than proof beyond a reasonable doubt.
>> A fact is proved by a preponderance of the
>> evidence, if you conclude that it is more likely than
>> not that that fact is true.
>>
>> If the People have not met this burden, you must
>> disregard this evidence entirely.
>>
>> If you decide that the defendant committed the
>> uncharged domestic violence, you may, but are not
>> required, to conclude from the evidence that the
>> defendant was disposed or inclined to commit
>> domestic violence, and based on that decision, also
>> conclude that the defendant was likely to commit
>> and did commit attempted murder as charged here.

/////

1      If you conclude that the defendant committed the
       uncharged domestic violence, that conclusion is
2      only one factor to consider along with all the other
       evidence.  It is not sufficient by itself to prove that
3      the defendant is guilty of attempted murder.  The
       People must still prove each charge and allegation
4      of every charge beyond a reasonable doubt."

5      Defendant concedes that the California Supreme Court rejected his
       argument in <u>People v. Reliford</u> (2003) 29 Cal.4th 1007, 1016.  The
6      instruction considered in <u>Reliford</u> was the older CALJIC No
       2.50.01, allowing evidence of a defendant's uncharged sex crimes.
7      However, there is no material difference in the manner in which
       each of the instructions allows the jury to conclude from the prior
8      conduct evidence that the defendant was disposed to commit a
       certain type of offense (in this case domestic violence), and
9      therefore likely to have committed the current offense.  (<u>See People
       v. Cromp</u> (2007) 153 Cal. App.4th 476, 480 [regarding sexual
10     offenses].)  Therefore, we reject defendant's argument that the
       instruction violated his due process rights.

11
       Defendant argues that the "instruction needs to explain that
12     circumstantial evidence like prior offenses which is essential for
       guilt must be proved beyond a reasonable doubt."  (Italics omitted.)
13     He cites <u>People v. James</u> (2000) 81 Cal. App.4th 1343 in support
       of this proposition.  <u>James</u> has no application here, because it
14     involved the use of the pre–1999 versions of CALJIC Nos. 2.50.02
       and 2.50.01.  Those instructions permitted the jury to find by a
15     preponderance of the evidence that the defendant had committed
       domestic abuse in the past, and to infer that the defendant
16     committed the charged domestic abuse offense based on the past
       abuse alone.  (<u>Id.</u> at pp. 1346–1347, 1349–1350.)

17
       By contrast, the trial court instructed defendant's jury that the prior
18     act of domestic violence was "only one factor to consider along
       with all the other evidence[,]" and that it was "not sufficient by
19     itself to prove [guilt].  The People must still prove each charge and
       allegation of every charge beyond a reasonable doubt ."  This left
20     no doubt as to the correct burden of proof necessary for a finding
       of guilt.  The court did not err in giving the instruction.

21

22     (Opinion at 21-24.)

23              In <u>Gibson v. Ortiz</u>, 387 F.3d 812, 820 (9th Cir. 2004), <u>overruled in part</u> by

24     <u>Hedgepeth v. Pulido</u>, 555 U.S. 57, 60 (2008), <u>as recognized in</u> <u>Byrd v. Lewis,</u> 566 F.3d 855, 866-

25     67 (9th Cir. 2009), the Ninth Circuit held that the 1996 version of CALJIC No. 2.50.01 and

26     CALJIC No. 2.50.1, when given together at a criminal trial, violated a defendant's Fourteenth

                                          30

1   Amendment due process rights to be proven guilty beyond a reasonable doubt because they

2   allowed a jury to:  (1) find that a defendant had committed prior sexual offenses by a

3   preponderance of the evidence; (2) infer from those past offenses a predilection for committing

4   sexual offenses; and (3) further infer guilt of the charged offense based on those predilections.

5   However, CALJIC No. 2.50.01 was amended in 1999 to clarify how jurors should evaluate a

6   defendant's guilt relating to the charged offense if they found that he had committed a prior

7   sexual offense.  That revision added the following language: "However, if you find by a

8   preponderance of the evidence that the defendant committed prior sexual offenses, that is not

9   sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes."

10  CALJIC No. 2.50.01 (7th ed. 1999).  The revised instruction also provided that "[t]he weight and

11  significance of the evidence, if any, are for you to decide."  Id.

12          In 2002, CALJIC No. 2.50.01 was revised once again.  The 2002 revision deleted

13  the sentence "[t]he weight and significance of the evidence, if any, are for you to decide," and in

14  its place inserted the following statement:  "If you determine an inference properly can be drawn

15  from this evidence, this inference is simply one item for you to consider, along with all other

16  evidence, in determining whether the defendant has been proved guilty beyond a reasonable

17  doubt of the charged crime."  CALJIC No. 2.50.01.  In People v. Reliford, 29 Cal.4th 1007, 1016

18  (2003), the case cited by the California Court of Appeal in its decision rejecting petitioner's

19  challenge to this instruction, the California Supreme Court upheld the constitutionality of the

20  1999 version of CALJIC No. 2.50.01, but commented that the instruction had been "improved"

21  by the addition of the sentence in the 2002 amendment.  The Ninth Circuit has since held that

22  both the 1999 and 2002 revisions to CALJIC Nos. 2.50.01 and 2.50.1 are constitutionally valid.

23  Schultz v. Tilton, 659 F.3d 941, 943-45 (9th Cir. 2011).

24          Thereafter, challenges to the constitutionality of the 1999 and 2002 versions of

25  CALJIC No. 2.50.01 have been rejected by numerous federal courts in unpublished opinions.

26  See e.g. Abel v. Sullivan, No. 08-55612, 2009 WL 1220761, *3 (9th Cir. May 6, 2009) (2002

31

1  version); <u>Smith v. Ryan</u>, No. 05-16072, 2007 WL 387589, at *3 (9th Cir. Feb. 5, 2007) (1999

2  version); <u>McGee v. Knowles</u>, No. 05-17301, 2007 WL 135679, *1 (9th Cir. Jan. 8, 2007);

3  <u>Gridley v. Hartley</u>, No. 2:08-cv-2659 MCE KJN P, 2010 WL 2765662, *6 (E.D. Cal. July 13,

4  2010) (2002 version); <u>Cata v. Garcia</u>, No. C 03-3096 PJH (PR), 2007 WL 2255224, **15-16

5  (N.D. Cal., Aug. 3, 2007) (1999 version); <u>Perez v. Duncan</u>, No. C 04-5014 SI (PR), 2005 WL

6  2290311 (N.D. Cal., Sept. 20, 2005) (1999 version).  District Courts have also rejected identical

7  constitutional challenges to CALCRIM No. 852, the jury instruction given at petitioner's trial.

8  <u>See e.g.</u>, <u>James v. McDonald</u>, No. 2:11-cv-12258-JKS, 2012 WL 5868590, **14-15 (E.D. Cal.,

9  Nov. 19, 2012); <u>Simmons v. Hedgpeth</u>, No. 10Cv1795-DMS (BGS), 2012 WL 5966648, at ** 4-

10  9 (S.D. Cal., Oct. 10, 2012); <u>Luster v. Swarthout</u>, No. CV 10-02681 CAS (SS), 2012 WL

11  5347838, at ** 12-13 (C.D. Cal., Aug. 30, 2012).

12        Based on the reasoning of the above-cited opinions, this court concludes that the

13  decision of the California Court of Appeal rejecting petitioner's challenge to the jury instruction

14  given in his case was not contrary to or an unreasonable determination of federal law.

15  Petitioner's challenge raises the same arguments that were raised in the cases cited above.  For

16  the reasons set forth in those decisions, the jury instructions given at petitioner's trial regarding

17  propensity evidence did not deny him a fair trial, nor did it lower the prosecution's burden of

18  proof.  Accordingly, petitioner is not entitled to federal habeas relief on this claim.

19      **E.  Unconstitutionally Vague Statute**

20        As described above, petitioner's jury found that he had committed the first degree

21  murder of Laprea Tyson by means of lying in wait, pursuant to California Penal Code § 189, and

22  also found the special circumstance that he committed the murder "while lying in wait," within

23  the meaning of California Penal Code § 190.2(a)(15) to be true.  (CT at 323.)  Citing the decision

24  in <u>Lowenfield v. Phelps</u>, 484 U.S. 231 (1988), petitioner claims that his conviction violates the

25  Fourteenth Amendment due process clause because California's special circumstance of "lying-

26  in-wait" is materially indistinguishable from the "lying in wait" element of first-degree murder.

1   (Pet. at 29.)  Petitioner argues that "the only facially significant difference between the lying in

2   wait special circumstance and first-degree murder on this same theory is that the special

3   circumstance requires specific intent to kill."  (Id.)  He contends that, for this reason, California

4   Penal Code § 190.2 is unconstitutionally vague as applied to him.  (Id.)

5          Petitioner cites the decisions in Grayned v. City of Rockford, 408 U.S. 104 (1971)

6   and Lanzetta v. New Jersey, 306 U.S. 451 (1939) for the proposition that a statute is

7   unconstitutionally vague if "its prohibitions are not 'clearly defined.'"  (Id. at 27.)  He argues that

8   legislation that "allows for arbitrary enforcement" violates the equal protection clause.  (Id. at 27-

9   28.)  He further argues that the Eighth Amendment requires that "a special circumstance must

10  genuinely narrow the class of persons subject to the death penalty as compared to other murder

11  defendants," even in cases involving "LWOP punishment."  (Id. at 28.)  Petitioner contends that

12  "LWOP is a severe penalty too and the statutes authorizing it are supposed to be based on the

13  capital jurisprudence."  (Id. at 31.)  He further argues that this court should address "all these

14  claims here, including vagueness and equal protection as applied to an LWOP defendant who

15  does not receive a weighing/penalty phase."  (Id.)  Finally, petitioner summarizes his claims in

16  this regard as follows:

17          This defendant's LWOP term was imposed based on nothing more
            than dual use of the same facts that would [support a finding of]
18          first-degree murder, which only carries a term of 25 years to life.
            This was a patent violation of all the constitutional rights set forth
19          above, requiring reversal of the LWOP term under . . . any . . .
            harmless error standard.
20

21  (Id. at 31.)

22          The California Court of Appeal rejected petitioner's arguments in this regard,

23  reasoning as follows:

24          Defendant claims the lying-in-wait special circumstance is
            unconstitutionally vague as applied to him.  He claims that a
25          special circumstance must "genuinely narrow the class of persons
            subject to the death penalty as compared to other murder
26          defendants[,]" and argues that this principle also applies to a

                                              33

1    sentence of life in prison without parole.  He claims that the dual
     use of the same facts to support lying-in-wait first degree murder
2    and lying-in-wait special circumstance violates the Eighth
     Amendment, federal due process and equal protection, cruel and
3    unusual punishment guarantees, and deprived him of his state
     liberty interest in an informed jury determination on the issue.
4
     Defendant recognizes that the California Supreme Court rejected
5    the claim that the statute's vagueness violates federal and
     California standards of due process in People v. Morales, supra, 48
6    Cal.3d at page 557, but asserts the argument for the purpose of
     exhausting his state remedies.
7
     The California Supreme Court has also "repeatedly" rejected the
8    contention that the lying-in-wait special circumstance violates the
     Eighth Amendment "because it fails to narrow the class of persons
9    eligible for the death penalty and fails to provide a meaningful
     basis for distinguishing cases in which the death penalty is imposed
10   from those in which it is not."  (People v. Lewis (2008) 43 Cal .4th
     415, 515.)  The lying-in-wait special circumstance requires an
11   intent to kill, whereas lying-in-wait first degree murder does not.
     (People v. Superior Court (Bradway), supra, 105 Cal. App.4th at p.
12   311.)  Assuming the Eight Amendment requires a special
     circumstance to genuinely narrow the class of persons subject to
13   life without parole as opposed to other murder defendants, this is a
     sufficient distinction for narrowing the class of murderers subject
14   to receiving a sentence of life without parole.

15   (Opinion at 24-25.)

16          The Eighth Amendment requires state sentencing schemes to provide a

17   meaningful basis for distinguishing between defendants who are sentenced to death and

18   defendants who are not.  Godfrey v. Georgia, 446 U.S. 420, 428 (1980).  However, the United

19   States Supreme Court has not extended this rule to require states to distinguish between

20   defendants sentenced to life with the possibility of parole and defendants sentenced to life

21   without the possibility of parole.  Harmelin v. Michigan, 501 U.S. 957, 994–96 (1991); see also

22   Houston v. Roe, 177 F.3d 901, 906 (9th Cir. 1999) ("We therefore hold that the California Penal

23   Code does not violate the Eighth Amendment by failing to extend the Godfrey doctrine to LWOP

24   [life without the possibility of parole] crimes.")  Accordingly, the state court's denial of

25   petitioner's Eighth Amendment claim is not contrary to clearly established federal law.

26   /////

                                              34

1    To satisfy the due process requirements of the Fourteenth Amendment and the

2  void-for-vagueness doctrine, "a penal statute [must] define the criminal offense [1] with

3  sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in

4  a manner that does not encourage arbitrary and discriminatory enforcement." Skilling v. United

5  States, ___ U.S. ___, 130 S. Ct. 2896, 2927 (2010) (quoting Kolender v. Lawson, 461 U.S. 352,

6  357 (1983)).  Vagueness objections "under the Due Process Clause rest on the lack of notice, and

7  hence may be overcome in any specific case where reasonable persons would know that their

8  conduct is at risk." Bradway v. Cate, 588 F.3d 990, 992 (9th Cir. 2009) (quoting Maynard v.

9  Cartwright, 486 U.S. 356, 361 (1988)).  In assessing whether a state statute is unconstitutionally

10  vague, federal courts must consider state courts' constructions of the challenged statute. See

11  Kolender, 461 U.S. at 355.

12    In Bradway, the Ninth Circuit held that a state appellate court's determination that

13  California Penal Code § 190.2(a)(15) was not unconstitutionally vague was not contrary to or an

14  unreasonable application of clearly established federal due process law.  The court observed that

15  "[petitioner] has offered, and we have found, no decision of the Supreme Court holding that a

16  distinction in intent (or, indeed, any other distinction) fails to adequately narrow the class of

17  first-degree murderers to those properly eligible for a sentence of life without parole" under

18  California Penal Code § 190.2. Bradway, 588 F.3d at  992.  The court in Bradway further

19  observed that the United States Supreme Court had not "decided any other case that could

20  reasonably support [the petitioner's] due process claim of unconstitutional vagueness based on a

21  failure to narrow the class subjected to more severe penalties." Id.

22    In Lowenfield, the United States Supreme Court held that, in order to pass

23  constitutional muster, "a capital sentencing scheme must genuinely narrow the class of people

24  eligible for the death penalty[,]" and that the legislature must perform this "narrowing function"

25  either by "narrow[ing] the definition of capital offenses . . . so that the jury finding of guilt

26  responds to this concern" or "provid[ing] for narrowing by jury findings of aggravating

35

1   circumstances at the penalty phase." Lowenfield, 484 U.S. at 244-46 (internal citations omitted.)

2   Petitioner was not convicted of a capital crime and was not sentenced to death, and therefore the

3   decision in Lowenfield is not controlling on the issue he presents here.  The Ninth Circuit

4   explained in Bradway that, in the AEDPA context, the Supreme Court's death penalty

5   jurisprudence applicable to narrowing special circumstances simply does not apply to cases in

6   which the petitioner received a sentence of life without the possibility parole.  See Bradway, 588

7   F.3d at 992-93.  Accordingly, several district courts, in unpublished opinions, have rejected

8   arguments similar to those advanced by petitioner in support of this claim for relief.  See, e.g.,

9   Nichols v. Clark, No. CV 09-5875-DSF (JEM), 2012 WL 1019976, **16-17 (C.D. Cal., Feb. 29.

10  2012) (rejecting petitioner's challenge to his conviction on the ground that "it is unconstitutional

11  to use the same facts to elevate the degree of murder to first degree and to find the special

12  circumstance true"); Vang v. Walker, No. CIV S-09-0704 FCD GGH P, 2010 WL 3341525, *7

13  (E.D. Cal., Aug. 24, 2010) (rejecting claim that the drive-by special circumstance contained in

14  California Penal Code § 190.2(a)(21) is overbroad because it requires the same elements of proof

15  as the drive-by theory of murder); Villalobos v. Kernan, No. CV 06-03695-CAS (MAN), 2009

16  WL 1605652, *9 (C.D. Cal., June 5, 2009) (rejecting petitioner's claim that California law fails

17  to provide a meaningful basis for distinguishing between lying-in-wait murder carrying a

18  sentence of life with the possibility of parole, and the lying-in-wait special circumstance carrying

19  a sentence of life without the possibility of parole).

20          In light of the authorities cited above, petitioner has failed to demonstrate that the

21  state courts' rejection of his challenge to his sentence of life without parole was contrary to or an

22  unreasonable application of federal law.  Accordingly, his claim for federal habeas relief on this

23  ground should be denied.

24      **F.  Cumulative Error**

25          In his final claim for relief, petitioner argues that the cumulative effect of the

26  errors at his trial violated his right to due process and a fair trial.  (Pet. at 32.)  The California

36

1    Court of Appeal rejected this claim, stating:

2             Defendant argues the cumulative effect of errors deprived him of
                 due process and a fair trial. We have concluded there were no
3                 errors, accordingly no reversal is required.

4    (Opinion at 25.)

5             The Ninth Circuit has concluded that under clearly established United States

6    Supreme Court precedent, the combined effect of multiple trial errors may give rise to a due

7    process violation if it renders a trial fundamentally unfair, even where each error considered

8    individually would not require reversal.  Parle v. Runnels, 505 F.3d 922, 927 (9th. Cir. 2007)

9    (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) and Chambers v. Mississippi, 410

10   U.S. 284, 290 (1973)).  See also Hayes v. Ayers, 632 F.3d 500, 524 (9th Cir. 2011) (if no error of

11   constitutional magnitude occurred at trial, "no cumulative prejudice is possible").  "The

12   fundamental question in determining whether the combined effect of trial errors violated a

13   defendant's due process rights is whether the errors rendered the criminal defense 'far less

14   persuasive,' Chambers, 410 U.S. at 294, and thereby had a 'substantial and injurious effect or

15   influence' on the jury's verdict."  Parle, 505 F.3d at 927 (quoting Brecht, 507 U.S. at 637).

16            This court has addressed each of petitioner's claims raised in the instant petition

17   and has concluded that no error of constitutional magnitude occurred at his trial in state court.

18   This court also concludes that the errors alleged by petitioner, even when considered together,

19   did not render his defense "far less persuasive," nor did they have a "substantial and injurious

20   effect or influence on the jury's verdict."  Accordingly, petitioner is not entitled to relief on his

21   claim of cumulative error.

22   **IV.  Conclusion**

23            For all the reasons set forth above, IT IS HEREBY RECOMMENDED that

24   petitioner's application for a writ of habeas corpus be denied.

25            These findings and recommendations are submitted to the United States District

26   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: April 5, 2013.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:
mitchell780.hc

38